In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3913

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LAWRENCE P. PETERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-CR-17—**William C. Griesbach**, *Judge.*

ARGUED SEPTEMBER 20, 2005—DECIDED JANUARY 27, 2006

Before CUDAHY, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Again we find ourselves in the midst of the fallout from *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), but this time there is a twist: rather than appealing his sentence, Lawrence Peters seeks to overturn his conviction. Post-*Blakely* and pre-*Booker*, it was less than clear whether it was necessary or proper to incorporate into indictments and jury instructions the United States Sentencing Guidelines ("the Guidelines"). During this time period, Peters was indicted, tried, and convicted. Peters appeals, claiming that it was plain error for the superceding indictment and jury instructions to include sentencing matters. Additionally, Peters claims he was

deprived of his right to counsel when a federal agent continued a custodial interrogation after Peters claims to have invoked his right to remain silent. For the following reasons, we find that his motion to suppress was properly denied and we affirm Peters's conviction.

## I.  HISTORY

### A.  *Robbery*

In the early morning of December 21, 2003, the Hillstop Convenience Store on the Menominee Indian Reservation in Keshena, Wisconsin, was robbed by a man wearing a ski mask and armed with a section of PVC pipe. A Hillstop employee was preparing for business and had just opened the store's safe when the robber approached the employee, threatened him with the pipe, and said, "Don't move." The robber removed bags containing cash, coins, and checks from the safe. With the bags in hand, the robber pulled telephone wire from the store's wall and locked the employee in the office. A short time later, the employee forced his way out of the office and called the police.

### B.  *Arrest and Interrogation of Peters*

The investigation led police to suspect Peters, but he was nowhere to be found. Several days later, on January 7, 2004, FBI Special Agent Gerald Mullen received a tip that Peters was at home. Mullen relayed the tip to tribal police and made his way to the tribal police department from Green Bay. Pursuant to a federal arrest warrant, Peters was taken into custody at his home by tribal police, including Tribal Investigator Edward (Doug) Snow. Upon his arrest, Peters was transported to the Menominee tribal police station and booked into the tribal jail. After booking, Snow presented him with an Advice of Rights

form, which contained *Miranda* warnings. Peters signed the waiver of rights form.

Peters was then taken to an office for questioning by Mullen and Snow. Once in the office, Mullen explained the nature of federal jurisdiction to Peters and read through the Advice of Rights form one more time. Mullen also explained that Peters would be going to Green Bay for pretrial services to determine whether Peters was financially eligible to have an attorney appointed for him. Mullen then began to discuss the investigation and to interrogate Peters.

Initially Peters denied any involvement with the Hill-stop robbery. Mullen continued interrogating Peters, informing him of the evidence the FBI had against him. Peters referred to the earlier conversation about meeting with pretrial services in Green Bay and added, "I think I would like to get to that now," or words to that effect.[1] Mullen then confronted Peters with a statement from Peters's daughter at which point Peters confessed to the robbery. Mullen subsequently prepared a written statement in which Peters admitted to committing the Hill-stop robbery and detailed Peters's activities following the offense. Without asking to see a lawyer, Peters reviewed and signed the confession.

### C.  Indictment and Trial

On January 13, 2004, Peters was indicted on one count of willfully taking money from the presence of another by intimidation within the boundaries of an Indian reserva-

---

[1] The words Peters actually used are not clear, but there is no material dispute here. In his brief and at oral argument, the words Peters claims to have spoken varied, subtly altering the quotation in his favor by making it more specific, such as, "I would like to get to the [Green Bay] part now." For our purposes, the alternatives have no effect on the outcome of the case.

tion, in violation of 18 U.S.C. § 1153(a) and 18 U.S.C. § 2111. On February 4, 2004, Peters moved to suppress the confession on the ground that he signed it after the agents refused his request for counsel. The matter was referred to Magistrate Judge Aaron Goodstein for an evidentiary hearing, during which Peters admitted he had been arrested many times and that in some of those instances he had invoked his right to counsel to stop interrogations. Basing his decision on Peters's past experiences and the two readings of the Advice of Rights form, the magistrate judge concluded that Peters understood his rights and could have stopped the interrogation as he had done before. The magistrate judge recommended Peters's suppression motion be denied. On March 19, 2004, the district court accepted the magistrate judge's findings of fact and conclusions of law, and denied Peters's motion to suppress. A jury trial was subsequently set for May 4, 2004.

At the request of Peters's counsel, the district court ordered Peters to undergo a competency examination. Peters was found competent to stand trial, but his counsel withdrew, which delayed the trial until August 4, 2004, to afford Peters's successor counsel an opportunity to prepare.

In the interim, *Blakely* and our *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), were decided. As a result, the government sought a superceding indictment and it was returned by the grand jury on July 27, 2004. In the superceding indictment, the robbery charge remained essentially the same, but three sentencing allegations were added. The relevant portion of the superceding indictment read as follows:

**<u>Offense Allegations</u>**
**<u>COUNT ONE</u>**
**Robbery**
**THE GRAND JURY CHARGES:**
**<u>COUNT ONE</u>**

1.   On or about December 21, 2003, in the State and Eastern District of Wisconsin,

**LAWRENCE PAUL PETERS**,

a Native American Indian and the defendant herein, within the territorial jurisdiction of the United States, willfully took money from the presence of another by intimidation, specifically, the defendant stole in excess of $30,000 in cash and checks from the Hillstop convenience store after threatening the clerk with a section of PVC pipe and locking the clerk in an office.

All in violation of Title 18, United States Code, Sections 1153(a) and 2111.

[on the next page]    **Sentencing Allegations**

1.   With respect to Count One of the indictment:

a.   The defendant committed the offense while brandishing a dangerous weapon. See U.S.S.G. §2B3.1(b)(2)(E).

b.   The defendant physically restrained a person to facilitate escape. See U.S.S.G. §2B3.1(b)(4)(B).

c.   The defendant took property valued at more than $10,000.00. See U.S.S.G. §2B3.1(b)(7)(B).

The district court read part of the superceding indictment to prospective jurors during voir dire. However, after a verbatim reading of the allegation involving the violation of 18 U.S.C. §§ 1153(a) and 2111, the district court— without mentioning sentencing—stated that there are "additional allegations in the indictment, which will be addressed, if necessary, in the verdict . . . . These are allegations that the defendant committed the offense while brandishing a dangerous weapon; that the defendant physically restrained a person to facilitate his escape; and that the defendant took property valued at more than ten thousand dollars." Before and after reading the indictment, the district court

admonished the prospective jurors that the indictment itself was not evidence and could not be used to infer guilt.

After a two-day trial, the district court instructed the jury as to the robbery charge, and submitted a special verdict form for each of the sentencing allegations. The court cautioned that the questions in the special verdict forms should only be considered if the jury found Peters guilty of robbery. After posing the questions, the special interrogatories concluded:

> In order to answer any of these questions "yes," the government must prove beyond a reasonable doubt that the answer to the question should be "yes". If the evidence does not convince you beyond a reasonable doubt that the answer should be "yes", you must answer the question "no."

Peters did not object. The jury found Peters guilty of robbery and answered "yes" to the special interrogatories. Despite failing to object on either issue, Peters moved for a new trial, unsuccessfully, arguing that the sentencing allegations and special verdict questions unfairly prejudiced him.

At sentencing, following our decision in *Booker*, the district court concluded the Guidelines were advisory and sentenced Peters to 72 months' imprisonment followed by 3 years of supervised release and ordered restitution in the amount of $18,787.29. Alternatively, the district court imposed a mandatory sentence of 110 month imprisonment pursuant to the Guidelines. The Supreme Court subsequently affirmed *Booker*, 125 S. Ct. at 746, which nullified the 110-month sentence mandated by the Guidelines.

On appeal, Peters seeks to overturn his conviction and obtain a new trial for two reasons: first, the district court should have granted his motion to suppress his confession because he had invoked his right to an attorney;

and second, the sentencing allegations in the indictment and jury instructions constituted plain error.

## II.  ANALYSIS

### A.  *Denial of Motion to Suppress Confession*

Peters appeals the district court's denial of his motion to suppress his confession, claiming he unambiguously invoked his right to counsel when he said, "I'd like to get to that part now." "In reviewing the district court's decision on a motion to suppress, we review questions of law de novo and questions of fact for clear error." *United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003). Peters does not contest on appeal the magistrate judge's factual findings which were adopted by the district court; rather, Peters disputes the legal effect of his words, arguing he did invoke his right to counsel, a question we review de novo. *See id.*

Because Peters already had been advised of his right to counsel and waived it, Peters's interrogation was proper (and his confession admissible) unless he subsequently advised the agents that he was invoking his right to an attorney. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Davis v. United States*, 512 U.S. 452, 458-59 (1994); *see generally Miranda v. Arizona*, 384 U.S. 436 (1966). The test of whether one has invoked the right to counsel is objective, *Davis*, 512 U.S. at 458-59 (1987) (citing *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987), requiring the suspect to "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. It is not enough that the suspect might be invoking the right to counsel; rather, the suspect must do so unambiguously. *Id.* (citations omitted). When a suspect makes an ambiguous statement, police officers need not cease an interrogation, *id.* at 459-60 (citation omitted), or ask clarifying questions, *id.* at 461-62.

Peters's statement, "I'd like to get to that part now," by itself goes nowhere toward invoking the right to counsel. However, Peters claims that under the circumstances its meaning is clear. While we agree that Peters's words should be viewed in the context in which they were spoken, as *Davis* requires, *id.* at 459, case law in this area is strict. *E.g., id.* at 462 (holding "Maybe I should talk to a lawyer" to be ambiguous); *United States v. Brown*, 287 F.3d 965, 972-73 (10th Cir. 2002) (holding suspect's contradictory answers on *Miranda* waiver form that he would answer questions without an attorney and that he wanted to talk to a lawyer to be ambiguous); *United States v. Zamora*, 222 F.3d 756, 766 (10th Cir. 2000) (holding "I might want to talk to an attorney" to be ambiguous); *Diaz v. Senkowski*, 76 F.3d 61, 63-64 (2d Cir. 1996) (holding "Do you think I need a lawyer?" to be ambiguous); *Flamer v. Delaware*, 68 F.3d 710, 725 (3d Cir. 1995) (holding defendant's request to call someone about possible representation to be ambiguous); *see Simmons v. Bowersox*, 235 F.3d 1124, 1131-32 (8th Cir. 2001) (holding denial of involvement in crime is not assertion of right to remain silent); *Burket v. Angelone*, 208 F.3d 172, 200 (4th Cir. 2000) (holding statements "I just don't think that I should say anything," and "I need somebody that I can talk to" to be ambiguous rather than assertion of right to remain silent).

For Peters to clear the bar, he must show a tight fit between his being informed of the right and his statement allegedly invoking it, so that under the circumstances he manifested "the clear implication of a present desire to consult." *Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994). Peters cites two cases to support his position. In *Smith v. Illinois*, the Supreme Court held the words, "Uh, yeah, I'd like to do that" to be a clear invocation of counsel. 469 U.S. 91, 93, 99-100 (1984). We note, however, that in *Smith*, the suspect made this statement during the reading of the *Miranda* warnings, immediately following

the portion entailing the right to counsel. *Id.* at 92-93. In *Alvarez v. Gomez*, the suspect invoked his right to counsel by asking, "Can I get an attorney right now, man?"; "You can have attorney right now?"; and "Well, like right now you got one?" 185 F.3d 995, 998 (9th Cir. 1999). In *Alvarez*, the suspect asked these three questions immediately after having been read the *Miranda* warnings and before he waived his right to remain silent. *Id.* at 996-98. Considering the three questions together, the Ninth Circuit held that Alvarez had unambiguously invoked his right to counsel. *Id.* at 998. Under the circumstances of these cases, the suspects unambiguously invoked their right to counsel.

To the contrary, the context of Peters's statement does not clarify its meaning. Because a significant time period elapsed between when the *Miranda* warnings were read to Peters and when he made the statement, during which he waived his right to an attorney and the interrogation began, the ambiguity cannot be cured by temporal proximity to the *Miranda* warnings' references to counsel. Moreover, Peters's statement referred not directly to a lawyer, counsel, or an attorney, but merely to pretrial services in Green Bay, at most an indirect reference. While Peters *might* have invoked his right to counsel, he did not do so unequivocally or unambiguously to satisfy *Davis*. Because the officer had no duty to ask Peters to clarify his ambiguous statement before continuing the interrogation, his subsequent confession was admissible.

### B.   The Use of the Guidelines in the Superceding Indictment and Jury Instructions

Because Peters did not object at trial, we review the inclusion of the sentencing factors in his indictment and the jury instructions only for plain error. Fed. R. Crim. P. 52(b); *United States v. Paredes*, 87 F.3d 921, 924 (7th Cir. 1996) (citations omitted).

*1. The Indictment*

Peters argues the district court erred by failing to strike the sentencing allegations from the superceding indictment, thereby violating the longstanding separation of powers prohibition of a federal common law of crimes. *See, e.g., United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32 (1812); *United States v. Coolidge*, 14 U.S. (1 Wheat.) 415 (1816). Peters begins by claiming the authority to enact criminal statutes originates in Congress and, under the nondelegation doctrine, must remain with Congress. Next, Peters points out the Guidelines were promulgated by the United States Sentencing Commission, a body partly comprised of Article III judges. Hence, Peters concludes, an indictment citing the Guidelines amounts to a common law charge originating in the judiciary, rather than in Congress. The government contends the sentencing allegations are mere surplusage, which admittedly should have been stricken under Federal Rule of Criminal Procedure 7(d).

Peters misses a crucial point: for an indictment to allege a common law crime, the sentencing factors must be essential to convict the defendant. Otherwise, "[a] part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored." *United States v. Quintanilla*, 2 F.3d 1469, 1475 (7th Cir. 1993) (quoting *United States v. Miller*, 471 U.S. 130, 136 (1985) (quotations and citation omitted)); *United States v. Swanson*, 394 F.3d 520, 525-26 (7th Cir. 2005) (citations omitted). "Allegations in an indictment that are not necessary to establish a violation of the statute in issue are mere surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *United States v. Mastrandrea*, 942 F.2d 1291, 1293 (8th Cir. 1991); *Swanson*, 394 F.3d at 525-26 (citations omitted).

Under "Count 1," the superceding indictment alleged that Peters willfully took money from the presence of another by intimidation (the essential elements of robbery, *see* 18 U.S.C. § 2111), and that Peters was an Indian and the crime was committed on an Indian reservation, establishing federal jurisdiction, *see* 18 U.S.C. § 1153(a). The sentencing allegations—brandishing a weapon, physical restraint to facilitate escape, and amount in excess of $10,000—appeared on the following page under a separate heading, "Sentencing Allegations," but not under a separate count. So Peters was charged with only one crime, and that charge sufficiently alleged a violation of a federal statutory crime. *See* Fed. R. Crim. P. 7(c)(1); 18 U.S.C. § 2111.

Even if the jury found the government did not prove beyond a reasonable doubt that Peters brandished a weapon, restrained another to facilitate escape, or took more than $10,000, he nevertheless could have been convicted of one count of robbery if the jury *did* find beyond a reasonable doubt that he was an Indian who willfully took money from the presence of another by intimidation while on an Indian reservation. Therefore, the sentencing allegations in the superceding indictment amount to mere surplusage and do not constitute elements of a common law charge.

## 2. The Voir Dire

Peters argues that even if the sentencing allegations are surplusage, their inclusion in the superceding indictment prejudiced him because the indictment was read to prospective jurors during voir dire. We disagree. Surplusage should not be stricken unless "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (quotations omitted); *accord United States*

*v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *United States v. Anderson*, 579 F.2d 455, 457 n.2 (8th Cir. 1978); *see United States v. Marshall*, 985 F.2d 901, 905-06 (7th Cir. 1993) (citations omitted). While not essential elements, the sentencing allegations nevertheless were relevant to the statutory crime alleged; hence, they did not lead to the admission of any evidence which could have prejudiced the jury's finding Peters guilty of robbery. First, whether Peters brandished a weapon was relevant to proving intimidation. Second, whether Peters used physical restraint to facilitate escape was relevant both to intimidation and the presence of another. Third, whether Peters took more than $10,000 was relevant to proving whether Peters took any money at all.

Additionally, we do not think the wording of the sentencing allegations, *e.g.,* "brandished" and "physical restraint," was so clearly inflammatory as to warrant overturning Peters's conviction. Indeed, at oral argument, Peters conceded that he would not object at trial to testimony containing similar words. We also note the district court instructed during voir dire that the indictment was not evidence, which weighs against finding plain error, *see Marshall*, 985 F.2d at 906 (citation omitted), and, after reading the robbery charge, prefaced the sentencing allegations by cautioning, "there are additional allegations in the indictment, which will be addressed, if necessary, in the verdict." Thus, the surplusage in the superceding indictment did not lead the jury to convict Peters where otherwise it would not, and we find no plain error in the superceding indictment.

### 3. The Jury Instructions

Peters seeks to overturn his conviction claiming the jury instructions that make references to sentencing matters deprived him of due process. However, no objections were

made to these instructions at trial. "Our plain error review is particularly light-handed in the context of jury instructions. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in trial court." *United States v. Griffin*, 84 F.3d 912, 925 (7th Cir. 1996) (quotations omitted). "[T]he error [must] be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Moore*, 115 F.3d 1348, 1362 (7th Cir. 1997) (quotations omitted). This determination requires us to view the submitted instructions "in light of the facts of the case and the evidence presented." *United States v. Garcia*, 897 F.2d 1413, 1422 (7th Cir. 1990) (citation omitted). By defining "lurid" terms that are not elements of the robbery offense, Peters argues, the instructions prejudiced him by sensationalizing the nature of the offense at the time when the trial judge's words carry their greatest weight with the jury. Additionally, Peters contends this enabled the prosecution to intertwine in its closing argument the prejudicial sentencing allegations with the question of guilt. The prejudice to Peters was so great, he claims, the district court should have bifurcated the trial.

But Peters cannot show how the jury's exposure to the sentencing factors probably changed the outcome of his trial. As with the superceding indictment, we think the words of which Peters complains fail to approach the level of hyperbole necessary to overturn a conviction. Simply put, "brandished," "dangerous weapon," and "serious bodily injury" are not lurid in their own right such that a jury could be irrevocably tainted by its mere exposure to them. These words commonly appear in other criminal statutes, and, as parts of substantive offenses, properly would be included in jury instructions. *See, e.g.*, 18 U.S.C. §§ 113(a)(3), (a)(6), (b)(2), 924(c), 1365, 2113(d).

Moreover, Peters's argument that he was particularly susceptible to prejudice when the district court read the

jury instructions did not address the effect of admonish-ments in the instructions. After delineating the essential elements of robbery, stating the standard of proof necessary for a guilty verdict, and supplying definitions of the robbery elements, the instructions continued, "[i]f you find the defendant guilty of robbery, as charged in the indictment, you must also answer each of the following questions yes or no." Only then did the instructions reference the sentencing allegations, in the form of special interrogatories and accompanied with legal definitions. By providing legal definitions for these phrases, the district court mitigated any potential prejudice to Peters by directing the jury to ground its verdict in the law rather than emotion. Peters did not show that the jury probably confused the sentencing factors with the issue of his guilt, and we do not find plain error.

## III.  CONCLUSION

For the foregoing reasons, the district court's denial of Peters's motion to suppress his confession was proper and Peters's conviction is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*