┌─────────────────────────────────────────────┐
│            **NONPRECEDENTIAL DISPOSITION**            │
│   To be cited only in accordance with Fed. R. App. P. 32.1   │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 2, 2015
Decided May 11, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

Nos. 14-1945 & 14-2434

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>JOSEPH NATALIZIO and JOSEPH ABATE<br>    *Defendants-Appellees*. | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 12 CR 568<br><br>Sharon Johnson Coleman, *Judge*. |

**O R D E R**

Joseph Natalizio and Joseph Abate were each charged with mail fraud and wire fraud and convicted by a jury for their respective roles in a mortgage fraud scheme that covered twenty mortgage loans and totaled more than $8.5 million dollars. On appeal, they argue that the evidence introduced at trial was insufficient to support their convictions. Additionally, Abate argues that his right to a fair trial was denied because the district court concluded that the government's version of the redacted indictment, which was provided to the jury during deliberations, was less confusing than the redacted version of the indictment proposed by Abate. We reject these arguments and affirm.

## I.    Background

We recite the facts in the light most favorable to the jury's verdict—in this case, the government. *United States v. Mitten,* 592 F.3d 767, 776 (7th Cir. 2010); *United States v. Jaderany,* 221 F.3d 989, 991 (7th Cir. 2000). SNAP Holdings, LLC, was an Illinois company whose managing members are not implicated in this appeal,[1] but who were purportedly in the business of buying, renovating, and reselling real properties for a profit. Although SNAP held title to identifiable real properties, functionally this entity was a front for a mortgage fraud scheme. In furtherance of the scheme, SNAP first arranged for funds from its account to be transferred into the accounts of straw buyers recruited by Abate so that they would be able to make a down payment. SNAP and/or Natalizio then prepared fraudulent loan applications on behalf of the straw buyers listing assets that exaggerated their net worth and submitted them to lender banks. Unbeknownst to the banks (except in one instance, where the loan officer was also part of the conspiracy), the mortgage brokerages utilized by the straw buyers were also coopted by SNAP and were owned by either Natalizio or Abate. After the banks processed the fraudulent applications and disbursed the funds at closing, the funds went directly into accounts operated by SNAP-affiliated conspirators. Meanwhile, the straw buyers acquired title to the overvalued properties. When they failed to make any payments, the banks foreclosed. During the foreclosure process, the banks realized that the properties' values were inflated, and that they were defrauded. This scheme caused approximately $8.5 million dollars in losses for lender banks. For their participation in furtherance of this scheme, the conspirators—including a bank loan officer—received a cut.

A federal grand jury returned a seven-count indictment against Natalizio, charging him with two counts of mail fraud and five counts of wire fraud, and a three-count indictment against Abate, charging him with two counts of mail fraud and one count of wire fraud. The indictment charged that Natalizio was the head of United Mortgage Services, which acted as the mortgage brokerage company for eight buyers who were fraudulently qualified for eleven different mortgage loans. It also charged that Abate owned APJ Consulting, Inc., where he operated as a recruiter who referred buyers to SNAP Holdings. Abate doubled as a middle-man which enabled SNAP to funnel down payment money to buyers through APJ Consulting for seven of the properties

---

[1] Before Natalizio and Abate went to trial, the two managing members of SNAP Holdings, LLC, (Steven Klebosits and Thomas Hyland) pleaded guilty to counts of mail fraud (Klebosits) and wire fraud (Hyland) for their participation in the scheme. *See USA v. Klebosits et al.,* 12 CR 568 (N.D. Ill.).

where buyers were fraudulently qualified. Natalizio and Abate pleaded not guilty and proceeded to trial.

At trial, the government presented testimony from twenty witnesses. These witnesses included seven buyers who obtained loans for which they were fraudulently qualified. Representatives from victim banks that made loans based on false representations, and a cooperating co-defendant, Jason Strever (who had pleaded guilty to mail fraud and was seeking favorable treatment at sentencing) also testified. Additionally, the government presented documentary evidence including signed loan applications, real estate purchase agreements, bank records, tax records, and summary charts evidencing how both defendants benefitted from the fraudulent mortgage transactions. On July 3, 2013, the jury returned verdicts of guilty on all counts. Thereafter, Natalizio was sentenced to 38 months' imprisonment, while Abate was sentenced to 30 months' imprisonment. Natalizio and Abate timely appealed their convictions.

## II.     Analysis

### A. Natalizio's challenge to the sufficiency of the evidence

A jury verdict will be set aside only if the record contains no evidence, regardless of how it is weighed, from which a jury could have returned a conviction. *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009). To convict a defendant of fraud, the government must prove beyond a reasonable doubt (1) that the defendant was involved in a scheme to defraud; (2) had an intent to defraud; (3) and used the mail (for 18 U.S.C. § 1341) or interstate wire (for 18 U.S.C. § 1343) in furtherance of that scheme. *United States v. Durham*, 766 F.3d 672, 678 (7th Cir. 2014). An intent to defraud means that the defendant acted willfully and with specific intent to deceive or cheat, usually for the purpose of acquiring financial gain for himself or causing financial loss to another. *United States v. Sheneman*, 682 F.3d 623, 629 (7th Cir. 2012). Since direct evidence of a defendant's fraudulent intent is typically not available, "specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Paneras*, 222 F.3d 406, 410 (7th Cir. 2000).

The government presented documentary evidence that Natalizio was the Illinois-licensed loan officer who signed off on 11 fraudulent loan applications and that

he received commission checks for all 11 transactions. Yet Natalizio disputes that this evidence was sufficient to prove that he knowingly and intentionally participated in a scheme to defraud.[2]  Additionally, he argues that "the only connection between Natalizio and any illicit behavior came from the testimony of Jason Strever." Appellant Br. 26. At trial, Strever testified that Natalizio wanted him to persuade his friend employed at Castle Bank to produce false verifications of deposits and to provide a list of buyers who needed verifications of deposits in order to close their loans as well as the amounts of money that would need to be reflected in their bank accounts.

We address Natalizio's second argument first. Contrary to his argument, Strever's testimony is alone sufficient for us to uphold the jury's conviction because for Natalizio to prevail, he must demonstrate that the jury heard *no evidence* from which a jury could have returned a conviction. *Presbitero*, 569 F.3d at 704. The testimony of a single witness may be weak or strong, but "the testimony of just one witness, even a potentially biased witness, is sufficient to support a finding of fact," so it is sufficient to convict. *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000).

We could stop there, but even if we discard Strever's testimony (which the jury did not), the reality is that Strever's testimony was but a fraction of the evidence the government presented against Natalizio at trial. For example, it does not account for the evidence that he was the Illinois-licensed loan officer who signed off on 11 fraudulent loan applications and that he received commission checks for all 11 transactions. While Natalizio contends that he was framed, the evidence introduced at trial does not bear out this alleged deception. Because the eyewitness and documentary evidence was sufficient for a jury to conclude that Natalizio knowingly and intentionally participated in a mortgage fraud scheme, we affirm Natalizio's conviction.

### B.  *Abate's challenge to the sufficiency of the evidence*

Abate makes a similar challenge to the sufficiency of the evidence. *Presbitero*, 569 F.3d at 704. He contends that the government failed to prove the elements of fraud described in *Durham*, 766 F.3d at 678. In *Durham*, we affirmed wire fraud convictions of two defendants involved in a financial services scheme, but we vacated the conviction of the third defendant where the only evidence the government presented was two single-page printouts confirming that two transfers were made. 766 F.3d at 678. There,

---

[2]  However, Natalizio concedes that there was a scheme to defraud lenders and does not contest that the mail and interstate wires were used in furtherance of that scheme. Appellant Br. 24–25.

we concluded that evidence indicating transfers were made "did not establish that the transfers were made in furtherance of the fraudulent scheme." *Id.*

Relying on *Durham,* Abate argues that the government did not prove that the checks from SNAP to APJ were for anything but post-closing property management fees. But Strever's testimony contradicts this argument. Strever testified that he and Abate went into business together for the purpose of referring buyers to SNAP Holdings for the purpose of facilitating fraudulent transactions involving properties that were for sale. Strever testified in detail about Abate's fraudulent activities, including that he and Abate received (and then split) between $20,000-$25,000 for each client they referred. In total, the jury heard testimony that Abate was part of a plan to recruit straw buyers, to create fake verifications of deposits, and that he and his consulting company were involved in funneling down payments from SNAP in furtherance of the fraudulent scheme, all in return for a cut of the proceeds. In this case—unlike in *Durham*—there was eyewitness testimony introduced that permitted the jury to conclude that the transfers in question were made in furtherance of a fraudulent scheme, so the sufficiency challenge advanced on the basis of *Durham* fails. The jury believed Strever, and it was entitled to credit his testimony. *Presbitero,* 569 F.3d at 704; *Galbraith,* 200 F.3d at 1012.

C. *Abate's challenge to the delivery of the government's redacted version of the indictment to the jury*

The grand jury returned a 22-page, 12-count indictment implicating seven defendants with various iterations of mail fraud and wire fraud in connection with this scheme. Those defendants included: the two defendants implicated in this appeal, the two previously convicted managing members of SNAP, Strever, and two other defendants not implicated in this appeal. The indictment also contained boilerplate language about the grand jury proceedings and a forfeiture allegation directed at any real or personal property acquired from proceeds derived from the scheme.

Before jury deliberations began, the parties stated their positions on whether a copy of the indictment should be given to the jury, and if so, whether any of its contents should be redacted. To streamline the charges, the government sought to provide the jury with a version of the indictment that redacted extraneous material such as references to the grand jury, forfeiture, and counts involving defendants not on trial. Natalizio had no objection, but Abate objected and sought more extensive redactions, and then objected arguing that the indictment should not be given to the jury at all. Confronted with dueling redacted indictments or the option to provide no indictment at

all, the district court ruled that the jury should be given the government's version of the redacted indictment, and instructed the jury that "the indictment is simply the formal way of telling the defendants what crime they are accused of committing. It is not evidence that the defendants are guilty. It does not even raise a suspicion of guilt." We review the denial of the defendant's motion to strike surplusage for abuse of discretion. *United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011). "Surplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) (citation and internal quotations omitted).

Abate contends the district court abused its discretion by providing the jury with the government's redacted version of the indictment. We disagree. It is self-evident that the indictment under which Abate was charged was "relevant to the charge," so it satisfies the first element of *Peters*. The district court concluded that the jury should receive it because "particularly in this case it's actually, probably more than in some, going to be more helpful. You've got multiple defendants here." The district court reasoned that the government's version of the indictment was better because it was less confusing to the jury. This conclusion was not "inflammatory" or "prejudicial" in violation of the second or third elements of *Peters*— it was grounded in the court's concern for the defendant's right to a fair trial. Accordingly, it was not an abuse of discretion for the district judge to provide the jury with the government's version of a redacted indictment.

### III. Conclusion

The evidence was sufficient to sustain Natalizio and Abate's convictions, and the district court did not abuse its discretion by providing the government's redacted version of the indictment to the jury. For these reasons, Natalizio and Abate's convictions are AFFIRMED.