# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 01-4202 & 01-4203

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

VIKTOR KHILCHENKO and
NAZAR BABIYCHUK,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-CR-179—**Joan B. Gottschall**, *Judge.*

———————

ARGUED FEBRUARY 13, 2003—DECIDED APRIL 7, 2003

———————

Before COFFEY, MANION, and ROVNER, *Circuit Judges.*

COFFEY, *Circuit Judge.* Viktor Khilchenko ("Khilchenko")
and Nazar Babiychuk ("Babiychuk") challenge their con-
victions after a jury found them guilty of violating 18
U.S.C. § 894 ("Collection of extensions of credit by extor-
tionate means"). We affirm.

## I. FACTUAL BACKGROUND

Shortly after 6 p.m. on the evening of March 8, 2000,
Andrey Grin ("Grin") drove his Honda Passport to Skokie,
Illinois to pick up his fiancée, Irina Gaponenko, after work.

Grin pulled over to the curb, and Gaponenko entered the car. Just after she did so, a vehicle containing defendants Khilchenko and Babiychuk pulled in front of Grin's car and blocked it in. Khilchenko and Babiychuk exited their vehicle, approached Grin's car and opened the driver's door. The two then showed Grin a picture of a young woman, whom Grin recognized as Svetlana Fastoskaya ("Svetlana"), and claimed that Grin owed her $80,000. They threatened Grin, saying that if he did not pay up, they would harm him or his family.

Grin protested, saying that he did not owe any money to Svetlana, whom he knew as a former girlfriend and as a business partner in his video production business. Khilchenko and Babiychuk instructed Grin to contact Svetlana and determine what amount, if any, he owed Svetlana. They warned him not to go to the police and then left.

The next evening, March 9, Grin met with Svetlana at a pancake restaurant in Skokie. At this meeting, Svetlana told Grin that she wanted him to pay back the money she had invested in his video production business. She showed Grin a list of expenses and indicated that Khilchenko and Babiychuk had been hired to get her money back at a fifty percent commission. She also offered to forgive the debt if Grin married her. As Grin and Svetlana were talking, Khilchenko and Babiychuk entered the restaurant and confronted Grin. Khilchenko asked Svetlana how much Grin owed her; she responded by saying "$80,000." Khilchenko then threatened Grin that he would be killed if he failed to come up with at least $20,000 by 5 p.m. the next day.

At approximately 10 a.m. the next morning, March 10, Grin called the FBI in an effort to secure their assistance. Grin wore an FBI-provided wire to his last meeting with the defendants. After recording further threats made by

Khilchenko and Babiychuk, as well as tracking a transfer of money from Grin to the two defendants, the FBI arrested Khilchenko and Babiychuk.

On March 11, 2000, defendants were charged by Complaint with violations of 18 U.S.C. § 894 ("Collection of extensions of credit by extortionate means") under 18 U.S.C. § 2 ("Principals"). On April 6, 2000, defendants were charged by Indictment. Babiychuk filed a pretrial Motion to Dismiss Indictment, asserting that no interstate commerce issues existed in the case, and hence there was no federal jurisdiction. The district court denied the motion. At the close of evidence at the defendants' trial by jury, both defendants jointly renewed the pretrial Motion to Dismiss Indictment as a Motion for Judgment of Acquittal. The district court denied the motion, referencing its earlier ruling. The jury found the defendants guilty. Both of the defendants were sentenced to 35 months' imprisonment on November 29, 2001. Upon their release from confinement, both convicts are to be surrendered by the authorities to the immigration authorities for immediate deportation.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 3742(a). Khilchenko and Babiychuk raise three issues on appeal: (1) the evidence used against them was insufficient to support their conviction; (2) the evidence produced by the government at trial constituted a variance from or constructive amendment of the indictment; and (3) the law that they are charged with breaking violates the Commerce Clause.

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

Khilchenko and Babiychuk argue that the evidence presented by the government at trial was insufficient to sup-

port the jury's guilty verdict. This Court will reverse the jury's verdict only when there was "no basis for a rational factfinder to find all of the essential elements of a crime beyond a reasonable doubt." *United States v. McCaffrey,* 181 F.3d 854, 856 (7th Cir. 1999). We will not substitute our own credibility assessment for that of the factfinder, nor will we consider conflicting evidence or alternate theories of the case. *Id.*

In *United States v. Touloumis,* 771 F.2d 235 (7th Cir. 1985), this Court stated that to convict a defendant under § 894, the trier of fact must find that: (1) a collection or attempted collection of an "extension of credit" was made, (2) extortionate means were used, and (3) the defendant knowingly participated in these actions. *Id.* at 238. To "extend credit" is defined at 18 U.S.C. § 891(1) as "to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

Here, defendants challenge whether they knowingly participated in the collection or attempted collection of an extension of credit. Khilchenko and Babiychuk argue that no "debt" existed between Grin and Svetlana, and that as a result they could not have been attempting to collect an extension of credit under the first part of the *Touloumis* analysis.

The plain language of the statutory definition indicates that "extension of credit" applies to "debts or claims." 18 U.S.C. § 891(1). When applying 18 U.S.C. § 894, this Court does not inquire as to how the debt or claim arose. *See United States v. Annerino,* 495 F.2d 1159, 1166 & n.8 (7th Cir. 1974) (noting that § 894 forbids the extortionate collection of an extension of credit "regardless of whether the loan arose from a traditional type of loan or resulted from the assumption of responsibility as a result of force or threats").

Although Grin testified that he did not believe that he owed Svetlana any money and that he and Svetlana "never had an agreement that I had to return the money," Grin also testified that Khilchenko and Babiychuk told him he owed Svetlana $80,000 and that they would harm him if he did not pay it back. Based on such testimony, the jury could reasonably have found that a "debt or claim" existed between Svetlana and Grin. While there is no doubt that the existence of the debt or claim was disputed, such "disputed" debts are expressly included in the § 891(1) definition of "extension of credit." Therefore, because a rational jury could have decided as the jury in this case did, we refuse to disturb the trial court's ruling on this issue.

## B.  Variance from or Amendment to the Indictment

Khilchenko and Babiychuk argue that the evidence presented by the government at trial constituted a variance from or constructive amendment of the indictment. Such amendments are prohibited by the Fifth Amendment, which states that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Whereas Khilchenko and Babiychuk did not raise an objection to an alleged constructive amendment below, we review for plain error. *United States v. Baker*, 227 F.3d 955, 963 (7th Cir. 2000).

To effect a constructive amendment, the evidence at trial must establish offenses different from or in addition to those charged by the grand jury. *Id.* at 960. To merit reversal, the constructive amendment must be so serious that a defendant probably would have been acquitted without it. *Id.* at 963.

Khilchenko and Babiychuk's constructive amendment argument is essentially a repeat of their argument that the evidence against them was insufficient; that is, that the government did not prove the existence of a "debt" between

Grin and Svetlana. For the reasons discussed *supra*, their argument fails. The government presented sufficient proof of a "debt or claim" under § 891. We disagree with the defendants' contention, for the evidence at trial surely did not establish offenses different from or in addition to those charged by the grand jury, as *Baker* requires. We conclude that there was no constructive variance between the indictment and the evidence adduced at trial.

Khilchenko and Babiychuk also argue that "the facts surrounding defendants' case are inconsistent with the facts associated with a (typical) violation of (§ 894)." This argument, too, is unavailing. It does not matter whether defendants' conduct matches typical violations of the statute; what matters is whether their conduct violates the plain language of the statute. Because the evidence at trial was not at variance with the Indictment, the district court's ruling is affirmed.

## C. The Commerce Clause

Khilchenko and Babiychuk argue that the district court erred in dismissing their post-trial motion for judgment of acquittal. We review motions for judgment of acquittal under the same standard that the trial court applied. *United States v. Beck*, 615 F.2d 441, 447 (7th Cir. 1980). The firmly established rule is that the court must decide "whether at the time of the motion there was relevant evidence from which the jury could reasonably find (defendant) guilty beyond a reasonable doubt." *Id.* at 447-48. Evidence will be evaluated in the light most favorable to the Government, bearing in mind that it is the exclusive function of the jury to interpret witness credibility. *Id.*

In challenging the dismissal of their motion, defendants make two substantive arguments and one procedural argument. First, defendants argue that § 894 does not apply to them because it was not proven that they are members of

an organized crime ring, which they claim was Congress' attempted target in passing the statute. Second, defendants argue that § 894 should not be applied to them because the activity being prosecuted was purely intrastate. Finally, defendants object to the district court's denial of their motion for judgment of acquittal without making additional findings of fact as to evidence adduced at trial, based only on a reference to the court's pretrial denial of the same motion.

Accepting the appellants' first two arguments would force this Court to strike down a clear and unambiguous statute and overrule a host of case law supporting the rule that a constitutional interpretation of 18 U.S.C. § 894 may include both interstate and intrastate extortionate activity, regardless of whether the defendants are actually involved in organized crime. *See, e.g., United States v. Annerino*, 495 F.2d 1159, 1164-65 (7th Cir. 1974) ("It is not necessary that the participants in the transaction be members of organized crime or that the particular activity has affected interstate commerce."). In enacting § 894 Congress stated "even where extortionate credit transactions are purely intrastate in character, they nevertheless directly affect interstate and foreign commerce." Pub. L. No. 90-321 § 200 (codified at 18 U.S.C. § 894) (1994)). Khilchenko and Babiychuk have not presented a compelling reason for effecting such a change in the law, and we reject their invitation to overturn this Court's precedent in this area.

Finally, defendants argue that their motion for judgment of acquittal was improperly denied by the district court because it did not make additional findings of fact regarding the constitutional applicability of § 894 to the facts of this case. In denying the motion, the district court simply made reference to its pretrial denial of the same motion. The defendants argue that additional findings of fact are required by Fed. Rule of Crim. Proc. 12(e), which provides that "where factual issues are involved in determining a

motion, the court shall state its essential findings on the record."

Here, the district court made no findings of fact in its post-trial denial of the defendants' motion for acquittal. In this case, however, the district court was under no obligation to do so. *See, e.g., United States v. Annerino,* 495 F.2d 1159, 1164-65 (7th Cir. 1974) ("It is not necessary that the participants in the transaction be members of organized crime or that the particular activity has affected interstate commerce."). The district court properly rejected the defendants' post-trial attack on the constitutionality of 18 U.S.C. § 894 by employing the same rationale it had used before trial; namely, that Congress' power to regulate credit extensions has been affirmed by the Supreme Court. *See, e.g., Perez v. United States,* 402 U.S. 146 (1971). Thus, the district court's denial of the constitutional challenges raised by Khilchenko and Babiychuk is affirmed.

### III. CONCLUSION

We are convinced that the evidence submitted justified the jury's findings of guilt as to each defendant, that there was no constructive amendment of the indictment with which the defendants were charged, and that the district court did not err in denying the defendants' post-trial motion for acquittal. The convictions of Khilchenko and Babiychuk are AFFIRMED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*