In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-1129, 07-1610, & 07-1712

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

RONALD J. PRESBITERO,

*Defendant-Appellant,*
*Cross-Appellee,*

and

JOE J. VELASQUEZ,

*Defendant,*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 786—**Joan B. Gottschall**, *Judge.*

ARGUED FEBRUARY 28, 2008—DECIDED JUNE 24, 2009

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A jury heard abundant evidence that although Presbitero Drywall Company's

tax returns contained deductions for payments to sub-contractors, the subcontractors did not exist. The jury also heard that the company's owner, Ronald Presbitero, and construction superintendent, Joe Velasquez, went to great lengths to perpetuate the fiction, even having checks made out to the non-existent subcontractors that were cashed every week. Because we conclude a rational jury could have concluded that one reason both Presbitero and Velasquez attempted to make up the subcontractors was to impede the functions of the Internal Revenue Service, we uphold Presbitero's conviction for filing false tax returns and reverse the judgment of acquittal granted to Velasquez for conspiring to defraud the United States. The district court denied the government's request for a leadership enhancement for Presbitero based on its decision to acquit Velasquez, which we are reversing, so we remand Presbitero's case for resentencing.

## I. BACKGROUND

Ronald Presbitero was the namesake, president, and sole owner of Presbitero Drywall Company ("PDC"). As the name suggests, PDC was in the business of installing drywall. Joe Velasquez worked as PDC's construction superintendent. At trial, a jury heard that Presbitero signed PDC's corporate tax returns from 1995 through 1998. On each return, the company claimed tax deductions on schedule A, line 5 totaling approximately $5.9 million. James Hughes, the company's accountant, testified that he calculated the deductions by adding the

amounts of canceled checks made out from PDC to six subcontractors.

The government maintained at trial that the six subcontractors did not exist. The six entities were all incorporated on the same day. None ever filed a tax return of any sort with the IRS, none paid its annual tax with the Illinois Secretary of State, and the six corporations had all been dissolved (by operation of Illinois statute for failure to pay tax and file an annual report) before PDC issued any checks to them. Residents at several of the entities' listed business addresses also testified that no drywall businesses operated from the listed addresses. In addition, two foremen who worked for PDC during the relevant time said they had not seen subcontractors at job sites during their tenure and that they were not aware of the existence of the six subcontractors. The foremen also testified that drywall work was seasonal, with less work in the winter. IRS Special Agent Helene Seltzer testified that the hundreds of checks made out from PDC to the six subcontractors showed no seasonal fluctuation. The jury also heard that Presbitero ordered blank invoice forms for invoices *from* the six subcontractors and asked that each invoice look "different." The forms company delivered the blank invoices not to any subcontractors, but to PDC.

Velasquez was in charge of hiring, managing, and assigning PDC's drywall installers. Each week, for several years, Velasquez and others told Presbitero's assistant the number of hours subcontractors had purportedly worked that week. The assistant then prepared

checks and gave them to Presbitero, who signed them. She also prepared invoices from the six subcontractors to PDC, but the invoices were never mailed anywhere. Nor did she recall ever receiving a piece of mail, telephone call, or visit from a subcontractor.

Instead of mailing checks to the subcontractors, Velasquez or his sister, father, or one of his children would pick up the checks from Presbitero's assistant. Velasquez had made arrangements with Leonard Sklare whereby Sklare agreed to cash the checks at his currency exchanges every week or two in exchange for a fee of $50,000. Before the checks were taken to one of Sklare's currency exchanges each week, Velasquez often called ahead to tell Sklare the total value of the checks to be cashed to ensure Sklare had enough cash on hand. Velasquez also often took the checks himself to be cashed. The checks were cashed for tens of thousands of dollars at a time.

Presbitero delivered the canceled checks to Hughes, his accountant, so they could be used to prepare the company's financial statements and tax returns. On PDC's 2007 tax return, the company reported "other costs" on schedule A, line 5 of Form 1120 as $2,577,546. That number principally came from the checks made out to the six subcontractors the government maintained were fictitious. On the company's 2008 tax return, line 5 for "other costs" was reported as $1,540,370, and a supporting schedule reported that of that amount, costs for "sub-contractors" were $1,478,121. In addition to explaining how he prepared PDC's tax returns, Hughes

also explained that when PDC paid its employees, he would complete payroll tax forms containing amounts withheld from employees. He stated that such reporting did not apply to the employees of a subcontractor because the subcontractor was responsible for those payments.

An indictment charged Presbitero and Velasquez with conspiring to defraud the United States by impeding, impairing, and obstructing the lawful functions of the Internal Revenue Service in the correct determination and collection of revenue and income taxes, in violation of 18 U.S.C. § 371. The indictment also charged Presbitero with two counts of making false tax returns on behalf of PDC, in violation of 26 U.S.C. § 7206(1).

The jury convicted on all counts, returning a guilty verdict against both defendants on the conspiracy count and against Presbitero on the other counts. The district court later granted the defendants' request for a judgment of acquittal on the conspiracy count on the basis that Velasquez lacked the intent to defraud the IRS. Because a conspiracy conviction requires an agreement between at least two persons, Presbitero's conspiracy conviction fell as well. The district court denied Presbitero's request for a mistrial on the other two counts. After calculating the advisory guidelines range of imprisonment as 51 to 63 months, the district court sentenced him to 24 months' imprisonment, two years' supervised release, a fine of $50,000, and 100 hours of community service. Presbitero appeals, and the government brings a cross appeal.

## II. ANALYSIS

Presbitero raises several challenges to his convictions for filing false corporate tax returns. In a cross appeal, the government appeals the district court's grant of Velasquez's motion for judgment of acquittal as well as Presbitero's sentence. We address each argument in turn.

### A. Presbitero's Appeal

Presbitero appeals his conviction for willfully filing materially false corporate tax returns in violation of 26 U.S.C. § 7206(1). Pursuant to this section, it is a felony to

> Willfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.

#### 1. Constructive Amendment of the Indictment

Presbitero first argues there was an impermissible constructive amendment of the indictment, which occurs when the permissible bases for conviction are broadened beyond those presented to the grand jury. *See United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008); *see also Stirone v. United States*, 361 U.S. 212, 216-19 (1960). "[T]he allegations in the indictment and the proof at trial

must match in order 'to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense.'" *Blanchard*, 542 F.3d at 1143 (citations omitted). Presbitero takes exception to the government's argument at trial that he willfully filed false tax returns by including amounts attributable to fictitious subcontractors—a theory, he argues, not charged in the indictment.

We begin with our standard of review. The government maintains that Presbitero failed to raise a timely objection in the trial court on the constructive amendment of the indictment grounds he now raises, and that our review on this point should, therefore, be for plain error only. *See United States v. Khilchenko*, 324 F.3d 917, 920 (7th Cir. 2003). We agree. First, Presbitero's counsel did not make a constructive amendment of the indictment objection during the jury instruction conference, as he contends. During the discussion of a proposed instruction, Presbitero's counsel took issue with the fact that although the indictment alleged that multiple lines on the tax return were false, the government argued it only had to prove, for each count, that one of the lines alleged was false. There was no mention of a constructive amendment to the indictment. And there was also no mention of the complaint Presbitero now makes—that the government argued at trial that the subcontractors were fictitious. Presbitero's objections at the jury instruction conference did not preserve his constructive amendment argument.

Presbitero did raise a constructive amendment argument in a post-trial motion, but it did not preserve his

current argument either. The argument in his post-trial motion addressed an entirely different theory, one alleging that a witness's testimony before the grand jury differed from that given at trial, and it also came too late. *See United States v. Hughes*, 213 F.3d 323, 328 n.7 (7th Cir. 2000), *vacated on other grounds*, 531 U.S. 975 (2000). So, our review is only for plain error.

Plain error review means that we will reverse only if there was an error, that was plain, that affected the defendant's substantial rights, and that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Folks*, 236 F.3d 384, 390 (7th Cir. 2001). When the argument is that a constructive amendment of the indictment occurred, plain error occurs if the amendment constitutes a mistake so serious that the defendant probably would have been acquitted had there not been a mistake. *United States v. Ackley*, 296 F.3d 603, 606 (7th Cir. 2002).

There was no plain error warranting reversal here. The indictment's second and third counts are the relevant ones. Count Two charged that with respect to the PDC tax return for the fiscal year ending April 30, 1997:

> defendant PRESBITERO falsely represented and caused to be represented on line 2 and on Schedule A, line 8, of said Form 1120 that the "cost of goods sold" for Presbitero Drywall, Inc., was $5,415,290; and falsely represented and caused to be represented on Schedule A, line 5, and on said Form 1120 that "other costs" were $2,577,546. In fact, as PRESBITERO then and there well knew and be-

lieved, the "cost of goods sold" and "other costs" were less than the sums reported.

Count Three alleges, regarding the fiscal year ending April 30, 1998 tax return:

> that defendant PRESBITERO falsely represented and caused to be represented on line 2 and on Schedule A, line 8 of said Form 1120 that the "cost of goods sold" for Presbitero Drywall, Inc. was $3,918,803; falsely represented and caused to be represented that on Schedule A, line 5, and on said Form 1120 that "other costs" were $1,540,370; and falsely represented and caused to be represented on a supporting schedule that costs for "sub-contractors" were $1,478,121. In fact, as PRESBITERO then and there well knew and believed, the "cost of goods sold", "other costs", and costs for "sub-contractors" of Presbitero Drywall, Inc., were amounts less than the amounts reported.

As Presbitero emphasizes, Counts Two and Three did not explicitly allege that the tax returns were false because the subcontractors did not exist.

That does not mean, however, that a constructive amendment occurred when the government contended at trial that the subcontractors were fictitious. The government argued the subcontractors did not exist in support of the indictment's allegation that the deductions on line 5 of schedule A were too high. PDC's accountant testified that he prepared the deductions that appeared on line 5 based on the sums of the hundreds of checks made out to the six subcontractors, and the returns' supporting

schedules identified the source of the amounts on line 5 as payments to subcontractors (along with much smaller amounts for tool rental and scrapping). The government's position at trial was that each line 5 was false because it reflected deductions for millions of dollars in payments to six subcontractors that did not exist, which was consistent with the indictment's allegation that the amount on this line was false and too high. Put simply, the amounts on line 5 were too high if there were no subcontractors.

Presbitero also contends that the government did not prove the charge in the indictment that the amounts on the "other costs" lines (line 5) and "costs of goods sold" lines (line 8) were "[i]n fact" "less than the sums reported." He points out that line 8 on schedule A is a total line summing the amounts on several lines, including line 3 for "cost of labor" and line 5 for "other costs." So, he maintains, if the deductions actually reflected payments to employees that should have been taken on line 3 ("cost of labor"), the amounts on the total lines (line 8) were still accurate. The jury was not permitted to convict Presbitero upon a finding that only the total line was wrong, though. Instead, to account for this potential problem, the jury received an explicit instruction that it had to find line 5 false in order to convict Presbitero on Counts Two and Three. That instruction was consistent with long-standing case law that generally, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . ., the verdict stands if the evidence is sufficient with respect to any of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970).

And a section 7206(1) conviction does not require the government to prove an actual tax deficiency. *United States v. Peters*, 153 F.3d 445, 461 (7th Cir. 1998); *see also Boulware v. United States*, 128 S. Ct. 1168, 1178 n.9 (2008) (noting that Courts of Appeals unanimously hold that section 7206(1) does not require proof of a tax deficiency). The jury also received an instruction that to convict on Counts Two and Three it had to find the return "false as to a material matter, as charged in the Count." Read together, the instructions directed the jury that it needed to find line 5 on schedule A false in the manner charged in the indictment to convict him. *See United States v. Evans*, 486 F.3d 315, 324 (7th Cir. 2007) (stating that appellate court gives deference to specific wording of jury instructions as long as they contain offenses' essential elements).

Moreover, Presbitero could not have been terribly surprised that the government argued the returns were false by virtue of including amounts attributable to fictitious subcontractors, nor does he explain how his ability to prepare his defense was impaired. *See Blanchard*, 542 F.3d at 1143 (noting that one of the principal concerns behind the prohibition on constructive amendments is the impairment of a defendant's ability to prepare his defense). The government filed a proffer pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), *overruled on other grounds, Bourjaily v. United States*, 483 U.S. 171 (1987), well before trial that clearly maintained the six subcontractors were fictitious. In addition, Count One's charge of a conspiracy to impede the functions of the Internal Revenue Service alleged that the six entities were fictitious and contained numerous paragraphs

explaining why, including that the defendants had created false invoices for more than 800 checks written to the fictitious corporations. There was no constructive amendment of the indictment warranting a new trial here.

### 2. Sufficiency of the Evidence

Presbitero also argues that insufficient evidence supports the jury's decision to find him guilty of violating 26 U.S.C. § 7206(1). A defendant seeking to reverse a conviction based on insufficient evidence faces a heavy burden, with our inquiry being whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brandt*, 546 F.3d 912, 915 (7th Cir. 2008) (quoting *United States v. Farris*, 532 F.3d 615, 618 (7th Cir. 2008)).

Sufficient evidence supported Presbitero's conviction. A conviction under section 7206(1) requires proof that: (1) a person made or subscribed to a federal tax return which he verified as true; (2) the return was false as to a material matter; (3) the defendant signed the return willfully and knowing it was false; and (4) the return contained a written declaration that it was made under the penalty of perjury. *United States v. Peters*, 153 F.3d 445, 461 (7th Cir. 1998). Presbitero contests the second and third requirements.

"[A] false statement is 'material' when it has 'the potential for hindering the IRS's efforts to monitor and verify the tax liability' of the corporation and the taxpayer." *Peters*, 153 F.3d at 461 (quoting *United States v. Greenberg*,

735 F.2d 29, 32 (2d Cir. 1984)). "The focus of 7206(1) is clearly on the taxpayer's intent." *Id.* Presbitero maintains on appeal that the tax returns were not false as to a material matter because, he says, the deductions on the returns were for payments made to independent contractors. Payments to independent contractors, he points out, would not carry with them the tax obligations imposed upon a company when it pays employees. Presbitero never argued his independent contractor theory at trial, however, and instead repeatedly referred to the workers as employees. He also did not ask for a jury instruction on his current independent contractor theory.

Alternative explanations are generally not enough to win a challenge to the sufficiency of the evidence. *United States v. Humphreys*, 468 F.3d 1051, 1054 (7th Cir. 2006). Here, there was plenty of evidence from which the jury could have concluded that Presbitero helped make up six purported subcontractors. Witnesses testified that drywall businesses did not operate out of the listed addresses and none of the entities ever filed a tax return. Presbitero's own assistant made out the invoices that purportedly came from the six entities, on invoices that Presbitero had ordered himself. Taking millions of dollars in deductions for payments to subcontractors that did not exist would impede the IRS's ability to determine the company's tax liability. Moreover, if the jurors thought that the proceeds from the checks went to employees, taking deductions for payments to "subcontractors" meant that the company was not fulfilling the tax obligations it would have for employees.

Even if the deductions were for payments to independent contractors, as he now asserts, Presbitero still signed false tax returns because the deductions at issue were taken for payments to subcontractors. The "purpose behind [section 7206(1)] is to prosecute those who intentionally falsify their tax returns regardless of the precise ultimate effect such falsification may have." *United States v. DiVarco*, 484 F.2d 670, 673 (7th Cir. 1973). Therefore, it is not a defense to a charge of willfully and knowingly filing a fraudulent tax return that the amount fraudulently deducted could have been deducted for some other reason. *United States v. Helmsley*, 941 F.2d 71, 92-93 (2d Cir. 1991); *United States v. Bliss*, 735 F.2d 294, 301 (8th Cir. 1984). We also disagree with Presbitero's contention that no rational jury could have found the drywall installers were employees instead of independent contractors. Velasquez hired and fired the workers, gave out the work assignments and schedules, and set the rate of pay. Foremen employed by PDC supervised the work at the site, and PDC purchased and provided the drywall. In addition, no worker received a Form 1099 from PDC. *See Bennett v. Dep't Employment Sec.*, 530 N.E.2d 541, 544 (Ill. App. Ct. 1988) (finding drywall installers were employees where plaintiff set wages, provided materials, imposed deadlines, and could discharge if work unsatisfactory). Also, from the testimony regarding a lack of seasonal fluctuation in the checks cashed at the currency exchange, the jury could have concluded that all the proceeds from the checks were not used to pay workers of any sort for installing drywall, meaning that costs were less than the sums reported on the returns as the indictment had alleged.

Presbitero also contests the sufficiency of the proof that he signed the return willfully and knowing that it was false. Again, he faces a steep uphill battle, as our only question is whether there was sufficient evidence to support the jury's conclusion that he did. *See Brandt*, 546 F.3d at 915. As we discussed, the jury had plenty of evidence from which it could conclude that Presbitero, the owner of the company, went to great lengths to make it seem that his company was paying millions of dollars to subcontractors. That evidence bears on his knowledge of the falsity of the returns he signed that took deductions for subcontractors, as does the fact that he brought the canceled checks to his accountant specifically so that the accountant could prepare the company's tax returns and other reports. Moreover, the jury heard that employee wages carry with them additional consequences that matter to the IRS, including withholding requirements and Social Security taxes. From all the evidence it heard, the jury could have believed that one reason Presbitero wanted to take deductions for "subcontractors" was to defraud the IRS and that doing so would have impeded the IRS had it attempted to look into his pay scheme. The jury therefore could have found that he signed the returns willfully and knowing that they were false, and sufficient evidence supported the jury's verdict.

### 3.  Due Process Based on Successive Prosecutions

Presbitero also argues that he was deprived of his right to the due process of law when the government prosecuted him in this case after unsuccessfully charging and trying

him with ERISA and mail fraud violations in an earlier case because, he says, the government took inconsistent positions in the two cases. The indictment in the earlier case charged that Presbitero and Presbitero Drywall Company underreported the total hours worked by drywall installers and the total fringe benefit contributions due for PDC from January 1995 through August 1997, thereby defrauding a carpenters' trust fund and causing false reports to be filed with the Department of Labor. A jury convicted the company on four ERISA counts. Presbitero, individually, was acquitted.

We review Presbitero's due process claim de novo. *See United States v. Eshkol*, 108 F.3d 1025, 1027 (9th Cir. 1997). As support for his argument, Presbitero directs us to decisions from other circuits that found due process violations where the government took fundamentally opposite positions in different trials involving the same crime. *See Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000) (finding due process violation where state used "inconsistent, irreconcilable"theories to secure convictions against two defendants in different trials for the same offenses and stating, "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime"); *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538 (1998) (stating "it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime"); *see also Abbate v. United States*, 359 U.S. 187, 197-200 (1959) (Brennan, J., specially concur-

ring). Not everyone agrees that the due process clause prevents the government from arguing inconsistent theories. *See United States v. Frye*, 489 F.3d 201, 214 (5th Cir. 2007) (stating "a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause" but finding inconsistencies not material to the conviction) (citation omitted); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 190 (2005) (Thomas, J., concurring) (stating that the Supreme Court "has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories").

This case does not present us with the opportunity to decide whether we would agree with *Smith* and *Thompson*. Notably, unlike in those two cases, the two trials did not involve the same underlying crime. The indictment in the first case alleged that false statements or omissions were made in ERISA-related documents as part of a scheme to defraud a carpenters' union. This case, on the other hand, alleged tax fraud based on deductions taken in the company's corporate tax returns.

In addition, the government did not take fundamentally opposite positions in its two prosecutions. The government's position in the first case was that PDC employees installed the drywall for PDC and that PDC understated the number of hours worked by those employees in its monthly reports to the union fringe benefit funds. *See, e.g., United States v. Presbitero Drywall Co., Inc.*, No. 02 CR 165, 2003 WL 1562280, at *1-3 (N.D. Ill. Mar. 24, 2003) (memorandum opinion resolving post-trial motions). The defen-

dants maintained in the first case that subcontractors had performed the work and that the company did not have to report hours worked by subcontractors to the union funds. The government then demonstrated that the subcontractors did not exist. In this case, the government's position was that the six subcontractors did not exist. As a result, it maintained, Presbitero was guilty of filing false corporate tax returns because he took deductions on the basis of non-existent subcontractors. The government contended in both trials that the subcontractors did not exist. There is no fundamental conflict in these positions. Finally, although Presbitero's brief asserts that the amount of work actually performed was the central issue in each prosecution, the amount of drywall installed was not the issue here; rather, the question was whether six subcontractors that the government maintained were fictitious had installed the drywall.

### 4.   Sixth Amendment Right to Confront Witnesses

Presbitero also argues that he was prohibited from cross examining IRS Special Agent Helene Seltzer regarding bias toward him because of his earlier acquittal on ERISA and mail fraud charges, and, therefore, that his Sixth Amendment right to confront the witnesses against him was violated. Cross examining a witness to establish bias implicates a core value of the Sixth Amendment's Confrontation Clause. *See United States v. Martin*, 287 F.3d 609, 620 (7th Cir. 2002).

Before trial, the government moved to bar any reference to Presbitero's prior acquittal. The district court granted

the motion but said that if the defense wanted to use the prior acquittal to show a government witness's bias, the defense should "see me ahead of time to get me to reconsider that ruling . . . I will reconsider it once the facts are brought to me." Presbitero did not raise the issue again during trial and did not ask the district court to allow him to raise his prior acquittal for bias purposes while Special Agent Seltzer was on the stand.

Special Agent Seltzer testified about summaries she prepared of the 800 or so checks PDC made out to the six subcontractors. She also testified that computer searches she ran yielded no evidence that the six subcontractors existed other than their incorporation in 1993 and dissolution in 1994. During her testimony, she also said there were no seasonal fluctuations in the value of checks cashed each week and that it was unusual for a business to cash checks at a currency exchange, for which a fee must be paid, instead of depositing them into a corporate checking account.

Presbitero argues on appeal that Special Agent Seltzer was biased because Presbitero was acquitted in the earlier case during which she also testified as a government witness. Had he asked the district court during the trial whether he could explore potential bias with this witness, as the court had instructed, the district court could have evaluated the request and made a determination in light of the evidence presented. His failure to do so means that our review is at the least forfeited, with our review for plain error. *See United States v. Anderson*, 450 F.3d 294, 299 (7th Cir. 2006); *cf. United States v. Irby*, 558

F.3d 651, 656 n.4 (7th Cir. 2009) (noting that plain error review might not be appropriate if defendant had strategic reasons for not raising claimed Confrontation Clause violation at trial).

We find no plain error here. That Special Agent Seltzer also testified in a previous case where Presbitero was acquitted does not necessarily mean she was biased in this one. Significantly, Special Agent Seltzer's testimony mainly summarized factual data, so it was readily subject to verification if inaccurate; it was not the type of testimony readily susceptible to bias. Any error in limiting cross examination was harmless. *See United States v. Smith*, 454 F.3d 707, 714 (7th Cir. 2006) (harmless error analysis applies to errors arising under Sixth Amendment Confrontation Clause).

### B.   Government's Appeal

#### 1.   Judgment of Acquittal on Velasquez's Conspiracy Charge

In a cross appeal, the government argues that the district court erred by granting Velasquez's motion for judgment of acquittal after the jury had found him guilty of conspiring to defraud the United States in violation of 18 U.S.C. § 371. Our review of a judgment of acquittal is de novo. *United States v. Hendrix*, 482 F.3d 962, 966 (7th Cir. 2007). A judgment of acquittal is to be granted only when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). During our review of the grant of a judgment of acquittal, we view the evidence in the light

most favorable to the government and ask whether any rational jury could have found the essential elements of the charged crime beyond a reasonable doubt. *United States v. Jones*, 222 F.3d 349, 352 (7th Cir. 2000). We will set aside a jury's guilty verdict only if "the record contains no evidence, regardless of how it is weighed," from which a jury could have returned a conviction. *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008) (quoting *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005)).

The statute at issue, 18 U.S.C. § 371, reads in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Count One in the indictment charged Presbitero and Velasquez with engaging in a conspiracy "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the IRS in the correct determination and collection of revenue and income taxes," in violation of 18 U.S.C. §§ 371, 2. The indictment asserted that the two defendants caused more than 800 checks totaling $5.9 million to be made to six fictitious corporations and created false invoices and other supporting paperwork for the six corporations. It further charged

that Presbitero filed PDC corporate tax returns claiming $5.9 million in payments to the six corporations as a deduction for cost of goods sold on the 1995 through 1998 tax returns.

Convicting Velasquez required the government to prove beyond a reasonable doubt that the conspiracy charged in Count One existed, that Presbitero and Velasquez knowingly and willfully joined the conspiracy with intention to further the conspiracy, and that a coconspirator committed an overt act in furtherance of the conspiracy. *See United States v. Jackson*, 33 F.3d 866, 870 (7th Cir. 1994); *United States v. Useni*, 516 F.3d 634, 650 (7th Cir. 2008); *see also United States v. Klein*, 247 F.2d 908 (2d Cir. 1957). The government presented more than enough evidence for a jury to find that the six subcontractors did not exist. A jury also could have readily concluded that Velasquez agreed to help perpetuate the fiction. Velasquez provided Presbitero's assistant with hours to be attributed to the subcontractors even though the subcontractors did not exist. He did this on a weekly basis, for several years, and Presbitero's assistant then used this information to type up hundreds of checks made out to the subcontractors. Velasquez was also the one who arranged for these checks to be cashed at currency exchanges owned by Leonard Sklare, and Velasquez often cashed the checks himself each week in exchange for tens of thousands of dollars in return.

The closest question is whether a rational jury could have found that Velasquez had the requisite intent. Velasquez maintains, and the district court agreed, that

the element of intent is lacking. The government agrees that to convict Velasquez of violating 18 U.S.C. § 371 in this case, it needed to prove that he intended to impede or obstruct the functions *of the Internal Revenue Service*, not just that he had the intent to do something improper. *See United States v. Attanasio*, 870 F.2d 809, 817 (2d Cir. 1989). Although the district court granted Velasquez's motion for judgment of acquittal, we agree with the government that a rational jury could have determined that Velasquez had the requisite intent.

That is, from the evidence before it, the jury could have concluded that Velasquez knew that at least one purpose of the agreement to make up the six subcontractors was to reduce PDC's tax liability on false pretenses. Doing so did not require Velasquez, who was in charge of hiring and managing the drywall installers, to understand exactly how PDC had prepared its tax returns (there was no evidence that he ever saw the tax returns or assisted in their preparation). The jury heard that Velasquez had filed individual tax returns before on which he had taken business deductions, and the jury therefore could have concluded that he understood the concept of business deductions. In addition, Velasquez's own signed tax returns included W-2 forms detailing withholdings made from his pay as a PDC employee, so a jury could infer that he understood the concept of employee withholding. A rational jury could have decided that Velasquez knew that when he submitted hours not actually worked by subcontractors to Presbitero's assistant and undertook the efforts he did to keep the subcontractor fiction alive, he was helping the company

falsely take business deductions for payments to fake subcontractors or helping it avoid employee tax liability by not accurately reporting the nature of hours worked.

In finding that Velasquez lacked the necessary intent, the district court stated that the defendants' actions could have been for "the purpose of siphoning funds from Presbitero Drywall or, as the defendants maintained, helping to avoid having to hire incompetent workers as a result of questionable union practices." There was no evidence, though, that Presbitero and Velasquez made up the subcontractors' existence to siphon funds from the company for themselves absent tax benefits (and that would have been a bit odd since Presbitero was the sole owner of PDC). A rational jury also could have concluded that the defense's argument that the money from the checks was paid to drywall installers in an attempt to avoid collective bargaining obligations did not make sense. If union issues were the real problem, the jury could have wondered why the company did not simply hire real subcontractors. In addition, the jury heard testimony that there was no seasonal fluctuation in the checks, which could have further helped it reject the defense's argument. Notably too, the jury could have concluded that Velasquez and Presbitero wanted to deceive both the union *and* the IRS; the two ideas are not mutually exclusive. The important point is that a rational jury could have taken the evidence before it and concluded that at least one reason Velasquez helped carry out the subcontractor fiction was to defraud the IRS. The judgment of acquittal in his favor is reversed.

We also agree with the government that the district court's conditional grant of a new trial to Velasquez cannot stand. Our review of a decision to grant a new trial is usually for abuse of discretion, *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006), but it is plenary when the district court's analysis was purely legal in nature, *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995). When evidence has been properly admitted at trial, as it was here, a district court may grant a new trial only if the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999). As the district court recognized, its reasoning in deciding Velasquez's challenge to the sufficiency of the evidence applied equally to its decision to grant him a new trial, such that if we reversed on the former we might reverse on the latter as well. For the reasons we discussed above, it would not be a miscarriage of justice to let the jury's guilty verdict stand. We therefore vacate the order that granted Velasquez a new trial.

### 2. Presbitero's Sentence

The government also challenges Presbitero's sentence. (It does not ask us to revisit his acquittal on Count One, the conspiracy count.) The government argues that the district court should have given Presbitero an enhancement pursuant to U.S.S.G. § 3B1.1 for being an organizer or leader of criminal activity. Application note 2 to this guideline says the enhancement applies when the defen-

dant is an organizer, leader, manager, or supervisor of "one or more other participants." With that in mind, the district court denied the government's request for this enhancement based on its conclusion that Velasquez was not a participant in the crime. As we discussed, we are reversing the district court's determination that Velasquez did not participate in the scheme. As a result, we remand Presbitero's case for resentencing, during which the district court should consider whether the U.S.S.G. § 3B1.1 enhancement is warranted. *See United States v. Scott*, 405 F.3d 615, 617 (7th Cir. 2005).

To aid everyone during the resentencing, we also take note of the government's arguments that the district court took impermissible factors into account when it sentenced Presbitero to a below-guidelines sentence. For one, the district court commented on the amount of money Presbitero paid in attorney's fees, stating at the sentencing hearing that Presbitero had spent "probably a good part of his savings defending against charges brought by the Government. That's a long time to be fighting the government. Almost ten years. And a huge amount of stress that's involved with that, and expense." Presbitero maintains that the district court did not actually rely on the amount of attorney's fees incurred when it decided which sentence to impose. Instead, he says, the comments we quoted were just observations that did not factor into his sentence.

It is not clear to us from the record whether the comments regarding attorney's fees and the resulting stress were simply asides at the hearing or whether they

factored into the imprisonment term decision. In an opinion issued after Presbitero's sentencing hearing, we explained that the fact "that a defendant spends heavily on lawyers is not a mitigating factor. It would not only encourage overspending; it would be double counting, since the pricier the lawyer that a defendant hires, the less likely he is to be convicted and given a long sentence." *United States v. Sriram*, 482 F.3d 956, 961 (7th Cir. 2007), *vacated on other grounds*, 128 S. Ct. 1134 (2008). So the district court on remand should not consider high attorney's fees as a mitigating factor. And while we certainly recognize the emotional and financial tolls of an investigation, indictment, and trial, the resulting stress is not in and of itself an appropriate reason to lower Presbitero's sentence. *See Sriram*, 482 F.3d at 961 (protracted prosecution not a reason to lower sentence).

The government also points out that the district court took note that the government was the victim in this case and then said that fact was "modestly mitigating" in that Presbitero had not depleted other individuals' fortunes. The government is a victim in all tax fraud cases, so that fact did not distinguish Presbitero from other persons who violate 26 U.S.C. § 7206(1). *See United States v. Higdon*, 531 F.3d 561, 563 (7th Cir. 2008); *cf.* 18 U.S.C. § 3553(a) (court should consider "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); *Gall v. United States*, 128 S. Ct. 586, 597 (2007) (when sentencing outside the guidelines, court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the

variance"). It is not clear to us whether that fact affected the sentence determination either, as the district court did not mention it when summarizing the reasons for choosing the sentence it did:

> Considering the absolute unlikelihood of recidivism, the passage of a significant period of time since the commission of the offense, during which there was no evidence that the defendant has committed other crimes, given defendant's age, given defendant's family situation, given the evidence that defendant has basically been a hardworking person for his entire life, I think that [the §] 3553 factors are adequately considered by this sentence.

The quoted passage reflects that the district court concluded Presbitero was not likely to recidivate, and the government challenges that determination as well. In particular, it maintains that the fact that Presbitero did not express contrition at sentencing should have been deemed to be an aggravating factor because Presbitero's "obstinate behavior" at sentencing suggested a higher sentence was necessary. We do not reach the same conclusion as the government.

First, we find no evidence of any obstinate behavior on Presbitero's part. When asked whether there was anything he wished to say before a sentence was imposed, Presbitero said, "No, your Honor, not really. I think [my counsel] said it all." Other than answering the court's yes/no questions at the beginning of the hearing, that was all he said at sentencing. Declining to exercise the right to allocute does not alone make a defendant's behavior

obstinate, and a defendant has no obligation to speak at sentencing if he does not wish to do so. More importantly, the district court judge presided over the hearing and commented on many other things, and she made no suggestion that there was anything obstinate in Presbitero's demeanor or behavior. *See Gall*, 128 S. Ct. at 597-98.

The case cited by the government, *United States v. Li*, 115 F.3d 125, 135 (2d Cir. 1997), does not compel the conclusion that the district court was required to impose a higher sentence because Presbitero did not admit his guilt. In that case, the defendant protested her innocence at sentencing in a narrative that lasted upwards of fifteen to twenty minutes. When the judge stopped her, the Second Circuit recounted, she "responded so emotionally that she was ordered—and was nearly removed—from the courtroom." The Second Circuit found no abuse of discretion in the district court's decision to take her protestations of innocence, attitude, and demeanor at sentencing into account in setting the sentence. We have no quarrel with that decision. As it applies to Presbitero, even putting aside the much more egregious behavior of the *Li* defendant, the Second Circuit's reasoning is important. The court did not say that a defendant who maintains her innocence *must* receive a higher sentence; instead, it emphasized the district court's discretion and found no abuse of discretion in the district court's decision to take the defendant's statements and behavior at sentencing into consideration in that particular case. That reasoning is consistent with the Supreme Court's recent emphasis on a sentencing judge's discretion at sentencing. *See Gall*, 128 S. Ct. at 600.

The district court here undertook a thorough evalua-
tion of whether Presbitero was likely to recidivate. *See*
18 U.S.C. § 3553(a)(2)(C) (court shall consider "the need
for the sentence imposed . . . to protect the public from
future crimes of the defendant"). It looked to facts in-
cluding that this conviction was Presbitero's first and
also that there had been a significant passage of time
since the offense, with no evidence he had committed
other crimes during that time. He also was retired, PDC
had been dissolved, and he was 65 years old at sentencing.
Although the government argues that age was an
improper consideration as Presbitero was not infirm or
unable to live in a prison, the district court considered
Presbitero's age as one indication that he was unlikely to
commit these crimes again. That was a proper consider-
ation under our case law. *See United States v. Carter*, 538
F.3d 784, 791-92 (7th Cir. 2008); *United States v. Holt*, 486
F.3d 997, 1004 (7th Cir. 2007). In short, we do not find an
abuse of discretion in the district court's determination
that Presbitero was unlikely to recidivate.[1]

Finally, we note that in making the observations we
did, we are not saying that a below-guidelines sentence is
necessarily unreasonable. *Cf. Gall*, 128 S. Ct. at 597 (review-

---

[1] We also note that the district court did not grant Presbitero a
reduction for acceptance of responsibility. *See United States v.
Travis*, 294 F.3d 837, 840 (7th Cir. 2002) (stating purpose of
acceptance of responsibility adjustment "is not only to induce
guilty pleas; it also takes into account the reduced rate of
recidivism among defendants who admit the wrongfulness
of their actions").

ing below-guidelines sentence only for abuse of discretion). It helps our review of whether a below-guidelines sentence is reasonable, though, when a district court makes clear which factors it relies upon to impose a sentence below the advisory guidelines range. *See Higdon*, 531 F.3d at 565; *see also United States v. Burton*, 543 F.3d 950, 953 (7th Cir. 2008). We remand Presbitero's case for resentencing consistent with this opinion.

## III.  CONCLUSION

Presbitero's conviction is AFFIRMED, but we VACATE his sentence and REMAND for resentencing. The judgment of acquittal as to Velasquez is REVERSED.